1

2

3

4

5

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

6

7   Delmy FRANCO ALEMAN, Cherly
    NORALES CASTILLO, and Alicia          Case No. 2:25-cv-163
8   CHAVARRIA LOPEZ, on behalf of
    themselves as individuals and on behalf of
9   others similarly situated,             **COMPLAINT—CLASS ACTION**

10                      Plaintiffs,

11       v.

12  DONALD J. TRUMP, President of the United
    States; Marco RUBIO, Secretary of State,
13  Department of State; U.S. DEPARTMENT OF
    STATE; James MCHENRY, Acting U.S.
14  Attorney General, Department of Justice;
    Benjamine HUFFMAN, Acting Secretary of
15  Homeland Security, Department of Homeland
    Security; U.S. DEPARTMENT OF
16  HOMELAND SECURITY; Michelle KING,
    Acting Commissioner for Social Security,
17  Social Security Administration; SOCIAL
    SECURITY ADMINISTRATION; Gary
18  WASHINGTON, Acting Secretary, U.S.
    Department of Agriculture; U.S.
19  DEPARTMENT OF AGRICULTURE; Jeff
    WU, Acting Administrator, Centers for
20  Medicare and Medicaid Services; CENTERS
    FOR MEDICARE AND MEDICAID
21  SERVICES,

22                      Defendants.

23

24

COMPLAINT                              NORTHWEST IMMIGRANT RIGHTS PROJECT
Case No. 2:25-cv-163                              615 Second Ave., Ste. 400
                                                      Seattle, WA 98104
                                                       (206) 957-8611

## INTRODUCTION

1.        On January 20, 2025, President Donald J. Trump issued an Executive Order that purports to unilaterally alter the meaning of the Fourteenth Amendment's Citizenship Clause, which guarantees birthright citizenship. The order directs federal agencies to bar certain persons born in the United States from the many benefits to which U.S. citizenship entitles them, all by executive fiat.

2.        The Executive Order (EO) is a flagrant violation of the Citizenship Clause. In *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), the Supreme Court explicitly rejected the very interpretation of the Fourteenth Amendment that the President now cites to purportedly deprive people born on U.S. soil of U.S. citizenship.

3.        The Fourteenth Amendment provides that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside." U.S. Const. amend. XIV § 1. The language "subject to the jurisdiction thereof"—which the President relies on to claim that children born to undocumented noncitizens or those holding "temporary" status are not citizens—has a very specific meaning that only exempts certain narrow categories of persons, such as the children of diplomats and the children of hostile foreign armies on U.S. soil.

4.        This understanding of the Citizenship Clause is black-letter law, acknowledged by scholars and courts, and resoundingly grounded in the Citizenship Clause's text, history, the legislative debate surrounding it, and subsequent binding caselaw.

5.        Plaintiffs are three expecting mothers who are not U.S. citizens or lawful permanent residents with due dates after the implementation date of President Trump's Executive Order. By the terms of the EO—though not by the terms of the Fourteenth

COMPLAINT - 1
Case No. 2:25-cv-163

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

Amendment—their children will be considered without status in this country. They seek to represent a class of similarly situated parents and their children. These children, although born in the United States, will be deprived of U.S. citizenship under the EO.

6.      This deprivation of citizenship strikes at the core of this country's identity as a nation that, following Reconstruction, affirmed that all persons born in the United States are citizens, regardless of race, parentage, creed, or other markers of identity. The EO's interpretation seeking to strip citizenship of those born on U.S. soil amounts to "the total destruction of the individual's status in organized society" and "is a form of punishment more primitive than torture." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). This is because, as the Supreme Court has recognized over and over, "[c]itizenship is a most precious right," *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 159 (1963), whose "value and importance" is "difficult to exaggerate," *Schneiderman v. United States*, 320 U.S. 118, 122 (1943).

7.      Citizenship is the fundamental marker of belonging in this country. Indeed, without citizenship, the babies soon to be born in this country whom President Trump unilaterally and unconstitutionally seeks to strip of citizenship will be left without any legal immigration status, vulnerable to removal from this country, and threatened with the loss of "all that makes life worth living." *Bridges v. Wixon*, 326 U.S. 135, 147 (1945) (internal quotation marks omitted).

8.      Citizenship also provides a host of essential rights and benefits. It entitles someone to travel with a U.S. passport, to reenter this country, and to reside anywhere in the United States. Citizenship also guarantees access to benefits that are often necessary for survival for many low-income individuals, like access to the Supplemental Nutrition Assistance Program, Social Security programs, and Medicare and Medicaid programs. Citizenship is also required to

COMPLAINT - 2
Case No. 2:25-cv-163

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

qualify for many educational opportunities, opening doors that are otherwise unavailable on the path to higher education. Citizenship further guarantees the opportunity to seek employment to support oneself. By intending to strip Plaintiffs' children of this citizenship, the EO deprives Plaintiffs' children and Plaintiffs' families of access to the benefits and rights needed to achieve secure and stable lives in this country.

9.    Indeed, the persons targeted by the EO would be stripped of citizenship and left without any immigration status. They will be left on the outside of society and forced to remain in the shadows in fear of immigration enforcement actions that could result in their separation from family members and removal from their country of birth.

10.    Plaintiffs thus ask this Court to declare that the EO violates the Fourteenth Amendment's guarantee of birthright citizenship to their soon-to-be-born children. They ask this Court to enjoin Defendants from enforcing the EO to prevent the many harms it would inflict on them, their children, and their families.

**JURISDICTION**

11.    This case arises under the U.S. Constitution, 8 U.S.C. § 1401, the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, and the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*.

12.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as the instant case is a civil action arising under the laws of the United States. The Court may grant relief pursuant to its equitable powers, Federal Rule of Procedure 65, 5 U.S.C. § 706, and 28 U.S.C. §§ 2201–02.

COMPLAINT - 3
Case No. 2:25-cv-163

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

1

**VENUE**

2        13.        Venue properly lies in the Western District of Washington pursuant to 28 U.S.C.

3    § 1391(e) because this is a civil action in which one of the defendants is an agency of the United

4    States, a Plaintiff resides in the judicial district, and there is no real property involved.

5

**PARTIES**

6        14.        Plaintiff Delmy Franco Aleman is a noncitizen from El Salvador. She has

7    withholding of removal. She is pregnant, and her due date is March 26, 2025.

8        15.        Plaintiff Cherly Norales Castillo is a noncitizen from Honduras. She is in removal

9    proceedings and has filed an application for asylum before the immigration court. She is

10    pregnant, and her due date is March 19, 2025.

11        16.        Plaintiff Alicia Chavarria Lopez is a noncitizen from El Salvador. She has filed an

12    application for asylum before United States Citizenship and Immigration Services (USCIS). She

13    is pregnant, and her due date is July 21, 2025.

14        17.        Defendant Donald J. Trump is the President of the United States. As President, he

15    has ultimate authority over the co-defendant officials and agencies which he has ordered to

16    implement the EO.

17        18.        Defendant Marco Rubio is the Secretary of State and head of the Department of

18    State. In that capacity he is responsible for overseeing the Department of State's work in

19    processing passport applications and issuing passports to U.S. citizens. He is sued in his official

20    capacity.

21        19.        Defendant Department of State is responsible for, among other things, processing

22    passport applications and issuing passports to U.S. citizens.

23

24

COMPLAINT - 4
Case No. 2:25-cv-163

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

20.     Defendant James McHenry is the Acting Attorney General. As the Attorney General and head of the Department of Justice, he is responsible for overseeing and administering the Executive Office for Immigration Review, which adjudicates the removal proceedings of noncitizens charged with being inadmissible or removable from the United States. He is also responsible for overseeing the Department of Justice's immigration-related prosecutions, such as prosecutions for illegal entry and reentry to the United States. Defendant McHenry is sued in his official capacity.

21.     Defendant Benjamine Huffman is the Acting Secretary of the Department of Homeland Security (DHS). In that capacity, he is charged with the administration and enforcement of the Immigration and Nationality Act (INA) and oversees Customs and Border Protection (CBP), Immigration and Customs Enforcement (ICE), and USCIS. CBP is responsible for, among other things, operating U.S. ports of entry. ICE is responsible for, among other things, the detention and removal of unlawfully present noncitizens in the United States and prosecuting removal cases of noncitizens. Defendant USCIS is responsible for adjudicating immigration benefits applications, as well as certain applications to recognize a person's citizenship. Defendant Huffman is sued in his official capacity.

22.     Defendant Department of Homeland Security is the agency charged with enforcing and administering the INA. As detailed above, DHS is comprised of CBP, ICE, and USCIS (among other components), each of which plays a role in administering aspects of the INA.

23.     Defendant Michelle King is the Acting Commissioner of the Social Security Administration (SSA). In that capacity, she oversees the federal agency responsible for issuing social security numbers. Defendant King is sued in her official capacity.

24.     Defendant Social Security Administration is the federal agency responsible for issuing social security numbers.

25.     Defendant Gary Washington is the Secretary of the Department of Agriculture and oversees the Department. The Department of Agriculture administers the Supplemental Nutrition Assistance Program (SNAP), a public benefit available to many low-income U.S. citizens. He is sued in his official capacity.

26.     Defendant Department of Agriculture administers the SNAP program.

27.     Defendant Jeff Wu is the Acting Administrator for the Centers for Medicare and Medicaid Services (CMS). CMS provides health coverage to people in the United States through Medicaid, a program available to U.S. citizens. He is sued in his official capacity.

28.     Defendant CMS provides health coverage to people in the United States through Medicaid, a program available to U.S. citizens.

## STATEMENT OF FACTS AND LEGAL BACKGROUND

### I.    The Executive Order and its Targets

29.     On January 20, 2025, President Donald J. Trump issued the Executive Order entitled "Protecting the Meaning and Value of American Citizenship," purporting to eliminate birthright citizenship for certain individuals born in the United States.

30.     President Trump issued the Executive Order hours after his inauguration as President, as part of a flurry of Executive Orders targeting immigrant communities in this country, including individuals who came to the United States seeking protection.

31.     The EO states that, beginning thirty days after the signing of the order, "no department or agency of the United States government shall issue documents recognizing United States citizenship" to a newborn child where (1) "that person's mother was unlawfully present in

COMPLAINT - 6
Case No. 2:25-cv-163

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

the United States and the person's father was not a United States citizen or lawful permanent

resident at the time of said person's birth" or where (2) "that person's mother's presence in the

United States was lawful but temporary, and the person's father was not a United States citizen

or lawful permanent resident at the time of said person's birth."

32.     In short, the order attempts to redefine the Fourteenth Amendment and end *jus soli*—or birthright citizenship—in the United States. Bizarrely, the order applies only on a prospective basis. As a result, if implemented, the Fourteenth Amendment's text would one thing for certain people, and the opposite for the same class of persons born mere days apart.

33.     The order's language underscores its arbitrary nature, particularly by failing to define who is considered "unlawfully present" or who has "temporary status."

34.     The INA contains many "non-immigrant" and other forms of status that do not provide or guarantee a pathway to lawful permanent residence.

35.     Many noncitizen parents-to-be covered by the EO include people who have lived in this country for decades and built their lives here. This includes people who have no status, as well as those who have or are seeking other forms of lawful status (including asylum and other humanitarian forms of relief provided by the INA).

36.     For the children of these people, the EO purports to strip them of the promise and guarantee of the Fourteenth Amendment.

## II.    Legal Background: The Fourteenth Amendment and *Jus Soli*

37.     This promise and guarantee of the Fourteenth Amendment is conveyed by its plain text. According to the Amendment's Citizenship Clause, "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside." U.S. Const. amend. XIV § 1.

38.    Congress has codified the same language at 8 U.S.C. § 1401(a).

39.    This text enshrines in the Constitution the concept of *jus soli*, which is "the ancient and fundamental" principle of "citizenship by birth within the territory" of the United States. *Wong Kim Ark*, 169 U.S. at 693.

40.    Birthright citizenship was a principle that already applied in the United States prior to Reconstruction. It had its roots in English common law, *see Calvin v. Smith,* 77 Eng. Rep. 377 (K.B. 1608), and applied in the colonial era and early years of the American republic, see *Wong Kim Ark*, 169 U.S. at 658; *Inglis v. Trustees of Sailor's Snug Harbor*, 28 U.S. 99, 164 (1830) (Story, J., dissenting).

41.    Founders like James Madison, court cases from the early Republic, Attorney General opinions, and leading legal commentators of the antebellum period all agreed that birthright citizenship applied. Notably, many of these same authorities also agreed that that principle applied to the children of noncitizens.

42.    The Fourteenth Amendment enshrined this concept in the Constitution by guaranteeing its provisions apply to "all persons."

43.    In particular, the Citizenship Clause ensured that the descendants of enslaved people disenfranchised by the Supreme Court's shameful opinion in *Dred Scott v. Sanford*, 60 U.S. 393 (1857), were guaranteed citizenship.

44.    By cementing this protection in the Constitution with such clear language, the framers "put citizenship beyond the power of any governmental unit to destroy." *Afroyim v. Rusk*, 387 U.S. 253, 263 (1967).

COMPLAINT - 8
Case No. 2:25-cv-163

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

45.    Indeed, because of the Citizenship Clause, the government has "no authority . . . to restrict the effect of birth, declared by the constitution to constitute a sufficient and complete right to citizenship." *Wong Kim Ark*, 169 U.S at 703.

46.    The constitutional text unequivocally demonstrated that these guarantees apply to *anyone* born on U.S. soil except for select groups of individuals not subject to the laws of the country.

47.    The phrase "subject to the jurisdiction" addresses specific categories of persons: those born to diplomats, those born to foreign armies on U.S. soil, and, at the time of ratification, those born to Native Americans "owing direct allegiance to their several tribes," who continued to be discriminated against under the law of that time. *Wong Kim Ark*, 169 U.S. at 693. Anyone else, i.e., those subject to the authority and sovereign power of the United States, are citizens if born on U.S. soil.

48.    Antebellum uses of the word "jurisdiction" confirm that the phrase "subject to the jurisdiction of" as used in the Fourteenth Amendment refers to the government's sovereign power and authority. Only people subject to the exemptions listed in the prior paragraph are not subject to this sovereign power and authority.

49.    The debate over the passage of the Fourteenth Amendment further confirms that only a few narrow categories of people are exempt from the scope of the Citizenship Clause.

50.    The debate also explicitly addressed how the Amendment would apply to noncitizens. During that debate, legislators left no doubt that the Amendment would apply to children born to noncitizens.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

51.    Case law in the century and half since passage of the Fourteenth Amendment has repeatedly confirmed that all children born to noncitizens—except for the acknowledged exceptions, like those born to diplomats or foreign armies—are U.S. citizens.

52.    Most importantly, in *Wong Kim Ark*, the Supreme Court specifically rejected the view that children must be subject to the jurisdiction *only* of the United States to enjoy territorial birthright citizenship. *See id.* at 693 ("Every citizen or subject of another country, while domiciled here, is within the allegiance and the protection, and consequently subject to the jurisdiction, of the United States."); *id.* at 694 (denying that the Fourteenth Amendment "excludes from citizenship the children, born in the United States, of citizens or subjects of other countries").

53.    The Court has since reaffirmed this view. In *Plyler v. Doe*, 457 U.S. 202 (1982), the Court unanimously reiterated that "all persons" in the Fourteenth Amendment includes individuals who have entered and remained in the United States unlawfully. 457 U.S. at 212 (1982); *id.* at 243 (Burger, C.J., dissenting). That conclusion is unsurprising, as it has long been the interpretation of the Fourteenth Amendment. *See Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886) (concluding that the Equal Protection Clause protects "all persons within the territorial jurisdiction" of a state). "That a person's initial entry into a State, or into the United States, was unlawful . . . cannot negate the simple fact of his presence within the State's territorial perimeter." 457 U.S. at 215. "Given such presence," such people are "subject to the full range of obligations imposed by the State's civil and criminal laws." *Id.* In other words, they are "subject to the jurisdiction" of the United States." U.S. Const. amend XIV § 1.

54.    Many other Supreme Court decisions have reiterated the understanding of the Fourteenth Amendment that persons born in the United States of noncitizen parents nonetheless

attain citizenship at birth. *See, e.g.*, *Weedin v. Chin Bow*, 274 U.S. 657, 670 (1927) (explaining that "one born in the United States" becomes "a citizen of the United States by virtue of the jus soli embodied in the [Fourteenth] Amendment"); *Hirabayashi v. United States*, 320 U.S. 81, 96 (1943) (noting tens of thousands of Americans of Japanese descent were "citizens because [they were] born in the United States"); *United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 73 (1957) (noting that a child born in the United States was "of course, an American citizen by birth," despite his parents' "illegal presence"); *INS v. Rios-Pineda*, 471 U.S. 444, 446 (1985) (noting a "child, who, born in the United States, was a citizen of this country," even though parents had "enter[ed] . . . without inspection").

55.    This uniform case law over the course of more than a century leaves only one conclusion with respect to President Trump's Executive Order: it is flagrantly unlawful.

**III.    Plaintiffs**

A. <u>Delmy Franco Aleman</u>

56.    Plaintiff Delmy Franco Aleman is a noncitizen from El Salvador.

57.    She has lived in the U.S. since 2015, and currently resides in Lynnwood, Washington.

58.    Ms. Franco lives with her partner, their 16-year-old daughter, and their 7-year-old son. She is also the caregiver for her teenage niece and nephew, who live with her.

59.    Ms. Franco was granted withholding of removal by an immigration judge in 2015.

60.    Ms. Franco learned she is pregnant with her third child in or around June 2024.

61.    Her expected due date is March 26, 2025.

COMPLAINT - 11
Case No. 2:25-cv-163

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

62.    When Ms. Franco learned of President Trump's executive order on birthright

citizenship, in January 2025, she became fearful for her unborn child, as neither she nor the

child's father are citizens or lawful permanent residents.

63.    Ms. Franco's family is one of mixed immigration status. One child is a U.S.

citizen, and one is a lawful permanent resident, while she and her partner do not have any

permanent status.

64.    Ms. Franco fears that the EO puts her family at risk of separation, and that her

expected child may become a target for immigration enforcement. She wants the child to feel

safe in the United States, never to face the possibility of removal to El Salvador, a country which

she fled for her own safety.

65.    Additionally, Ms. Franco desires that her soon-to-be-born child has access to

education, work authorization, and the many other benefits of U.S. citizenship—the same

benefits that are available to her other child who was born in this country. She fears the many

obstacles her child will face if the child lacks U.S. citizenship.

                    B. Cherly Norales Castillo

66.    Plaintiff Cherly Norales Castillo is a noncitizen from Honduras.

67.    She has lived in the United States since 2023, and currently resides in Seattle,

Washington.

68.    Ms. Norales lives with her partner and her four-year-old son.

69.    Ms. Norales and her son have a pending asylum application before the

immigration court.

70.    In 2023, they fled a violent and abusive situation in Honduras to seek protection

in the United States.

71.    Ms. Norales learned she is pregnant with her second child in or around July 2024.

72.    Her expected due date is March 19, 2025.

73.    When Ms. Norales learned of President Trump's executive order on birthright citizenship in January 2025, she became fearful for her unborn child, as neither she nor the child's father are citizens or lawful permanent residents.

74.    Ms. Norales fears for the safety and security of her family if her unborn child does not receive citizenship by birthright. She does not want her unborn child to ever face removal to Honduras, a country she had to flee due to abuse and violence. It is important to Ms. Norales that her family remain unified and safe in this country.

75.    Ms. Norales also desires that her soon-to-be-born child has access to an education, work authorization, and the many other benefits of U.S. citizenship. She fears the many obstacles her child will face if the child lacks citizenship.

        C. <u>Alicia Chavarria Lopez</u>

76.    Plaintiff Alicia Chavarria Lopez is a noncitizen from El Salvador.

77.    She has lived in the United States since 2016, and currently resides in Bothell, Washington.

78.    Ms. Chavarria lives with her partner and their five-year-old child.

79.    Ms. Chavarria has a pending asylum application before USCIS.

80.    In 2016, she fled a violent and abusive situation in El Salvador to seek protection in the United States.

81.    Ms. Chavarria learned she is pregnant with her second child in or around October or November 2024.

82.    Her anticipated due date is July 21, 2025.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

83.    When Ms. Chavarria learned of President Trump's executive order on birthright citizenship in January 2025, she became fearful for her unborn child, as neither she nor the child's father are citizens or lawful permanent residents.

84.    Ms. Chavarria's family is one of mixed immigration status. She is seeking asylum, and her five-year-old child is a U.S. citizen.

85.    Ms. Chavarria fears that the EO puts her family at risk of separation, and that her expected child may become a target for immigration enforcement. She does not want her unborn child to live in fear of removal to El Salvador, a country Ms. Chavarria had to flee for her own safety.

86.    Ms. Chavarria desires that her soon-to-be-born child has access to education, work opportunities, and the many other benefits of U.S. citizenship—the same benefits that are available to her other child who was born in this country. She fears the many obstacles her child will face if the child lacks citizenship.

## IV.    The Effect of the Executive Order

87.    The Executive Order will have widespread and destructive effects on the lives of Plaintiffs and proposed class members, which includes Plaintiffs' children.

88.    U.S. citizenship is a "priceless treasure." *Fedorenko v. United States*, 449 U.S. 490, 507 (1981). Not only does citizenship provide a sense of belonging, but it carries with it immense privileges and benefits—all of which the President claims to wipe away at the stroke of a pen.

89.    Among other rights, citizens are "entitled as of birth to the full protection of the United States, to the absolute right to enter its borders, and to full participation in the political process." *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 67 (2001).

90.     The implication of these rights is equally important: U.S. citizens cannot be detained by immigration authorities, removed from this country, separated from their families, or deprived of their friends and communities. *See, e.g.*, 18 U.S.C. § 4001 (preventing the U.S. government from detaining U.S. citizen absent authorization by Congress); 8 U.S.C. § 1229a(a)(1) (removal proceedings are to "decid[e] the inadmissibility or deportability of a [noncitizen]"). Such rights to belong and remain are among the most fundamental and valuable rights that the Constitution protects.

91.     Without these protections, Plaintiffs face the loss or removal of their children, whom DHS could take away and remove at any moment. This is not speculative. *See Ms. L. v. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018) (enjoining policy implemented by first Trump administration to deter immigration by separating parents and their children).

92.     Some of Plaintiffs' children may also end up stateless. A U.S.-born child deemed to be a noncitizen may not be recognized as a citizen under the laws of their parents' country or countries of origin. Even if legally possible, practical barriers may prevent these children from being recognized as citizens of any other country, especially where those countries offer no consular services in the United States (and thus no means to obtain a passport and verify citizenship). This is true for some large immigrant populations in the United States, like Venezuelans. *See* U.S. Dep't of State, International Travel, Learn About Your Destination, Venezuela (last updated Oct. 30, 2024), https://travel.state.gov/content/travel/en/international-travel/International-Travel-Country-Information-Pages/Venezuela.html ("The Venezuelan embassy and consulates in the United States are not open.").

93.     The order also deprives Plaintiffs' children of the ability to obtain social security numbers and work lawfully once they are of lawful age. Without social security numbers,

COMPLAINT - 15
Case No. 2:25-cv-163

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

1  Plaintiffs' children will be unable to provide for themselves or their families (including the

2  Plaintiffs themselves). *Gonzalez Rosario v. USCIS*, 365 F. Supp. 3d 1156, 1162 (W.D. Wash.

3  2018) (recognizing a "negative impact on human welfare" when asylum seekers "are unable to

4  financially support themselves or their loved ones").

5       94.    In addition, and among other things, the order strips Plaintiffs' children (once they

6  become adults) of the right to vote in federal elections, *see* U.S. Const. art. 1, § 2; serve on

7  federal juries, *see* 28 U.S.C. § 1865(b); serve in many elected offices, *see* U.S. Const. art. 2, § 1,

8  cl. 5; id. art. 1, §§ 2, cl. 2, 3, cl. 3; and work in various federal jobs, *see, e.g.,* 35 U.S.C. § 3; 47

9  U.S.C. § 154(b)(1); 49 U.S.C. §§ 106, 114(b), 44935(e)(2)(A)(ii).

10       95.    The order will further deprive some class members of access to higher education,

11  as they will not qualify for federal financial aid to higher education, limiting their ability to

12  develop their full potential. 20 U.S.C. § 1091(a)(5); 34 C.F.R. § 668.33(a)–(b).

13       96.    The order will also deprive some class members of access to other critical public

14  benefits. For example, as undocumented persons, Plaintiffs' children will not qualify for

15  federally funded SNAP benefits. *See* U.S.C. § 2015(f); 7 C.F.R. § 273.4. While Washington

16  State provides supplemental, state-funded programs for many noncitizens, not all noncitizens

17  (and thus not all class members' children) would be covered. *See, e.g.*, Wash. Admin. Code

18  § 388-424-0030 (addressing how immigration status affects eligibility for state-funded food

19  assistance programs); Wash. Admin. Code § 388-424-0001 (identifying qualifying immigration

20  statuses for state-funded food assistance programs).

21       97.    The Executive Order will deprive class members of any immigration status. The

22  INA and its implementing regulations do not provide any status to, and in fact do not

23  contemplate, persons born in the United States who are not U.S. citizens, except for those born to

24

COMPLAINT - 16
Case No. 2:25-cv-163

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

foreign diplomatic officers. *See* 8 C.F.R. § 101.3(a); *see also* 8 U.S.C. §1401(a). Indeed, most persons born in the U.S. who are subject to the EO will have no other path to gain lawful status in this country.

98.     Finally, the EO is a source of immense stress, anxiety, and concern for Plaintiffs. They are understandably apprehensive and distressed about the prospect that their families may be separated, rendered ineligible for benefits, and subject to many other harms.

## CLASS ACTION ALLEGATIONS

99.     Plaintiffs bring this action on behalf of themselves and all others who are similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2). A class action is proper because this action involves questions of law and fact common to the class, the class is so numerous that joinder of all members is impractical, Plaintiffs' claims are typical of the claims of the class, and Plaintiffs will fairly and adequately protect the interests of the class. Defendants have acted on grounds that apply generally to the class, so that injunctive and declaratory relief and relief under the APA are appropriate with respect to the class as a whole.

100.    Plaintiffs seek to represent the following class:

> All pregnant persons residing in Washington State who will give birth in the United States on or after February 19, 2025, where neither parent of the expected child is a U.S. citizen or lawful permanent resident at the time of the child's birth; and,

> all children residing in Washington State who are born in the United States on or after February 19, 2025, where neither of their parents is a U.S. citizen or lawful permanent resident at the time of the child's birth.

101.    The proposed class meets the numerosity requirements of Federal Rule of Civil Procedure 23(a)(1). The class is so numerous that joinder of all members is impracticable. The precise number of class members will be determined by how Defendants define and implement the key terms of the Executive Order. However, in 2021, Washington State estimated that there

COMPLAINT - 17
Case No. 2:25-cv-163

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

1    were over 300,000 undocumented noncitizens in the state. *See* Wei Yen, Washington state's

2    immigrant population: 2010-21, Office of Financial Management (May 2023),

3    https://ofm.wa.gov/sites/default/files/public/dataresearch/researchbriefs/brief110.pdf. Even a

4    conservative estimate thus suggests that thousands of people, and perhaps many more, will be

5    born this year alone in the state that will now be considered noncitizens. *See* All Births

6    Dashboard, Washington State Department of Health (last accessed Jan. 23, 2025),

7    https://doh.wa.gov/data-and-statistical-reports/washington-tracking-network-wtn/county-all-

8    births-dashboard (reflecting a fertility rate of 51.9 births per 1,000 women aged 15–44 in 2022 in

9    Washington). Additionally, the state also estimates that in 2022 there were about 4,000 births in

10   the state to parents who were undocumented. Lapkoff Decl., ¶ 11, *Washington v. Trump*, No.

11   2:25-cv-127-JCC (W.D. Wash. filed Jan. 21, 2025), ECF No. 13.

12        102.    The proposed class meets the commonality requirements of Federal Rule of Civil

13   Procedure 23(a)(2). The members of the class are all subject or will be subject to the Executive

14   Order stripping them or their soon-to-be or future children of U.S. citizenship. The lawsuit raises

15   questions of law common to members of the proposed class, including whether the Executive

16   Order violates the Fourteenth Amendment.

17        103.    The proposed class meets the typicality requirements of Federal Rule of Civil

18   Procedure 23(a)(3) because the claims of the representative Plaintiffs are typical of the class.

19   Plaintiffs and the proposed class share the same legal claims, which assert the same claim under

20   the Fourteenth Amendment, federal law, and the APA. All involve families where a child will be

21   born in the United States where neither parent is a U.S. citizen or lawful permanent resident.

22        104.    The proposed class meets the adequacy requirements of Federal Rule of Civil

23   Procedure 23(a)(4). The representative Plaintiffs seek the same final relief as the other members

24

COMPLAINT - 18
Case No. 2:25-cv-163

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

1   of the class—namely, an injunction that enjoins the President and federal agencies and personnel

2   from enforcing the order, a declaration clarifying the citizenship status of the children born in the

3   United States targeted by the Executive Order, and appropriate relief under the APA. Plaintiffs

4   will fairly and adequately protect the interests of the proposed class members because they seek

5   relief on behalf of the class as a whole and have no interest antagonistic to other class members.

6       105.    Plaintiffs are represented by competent counsel with extensive experience in

7   complex class actions and immigration law.

8       106.    The proposed class also satisfies Federal Rule of Civil Procedure 23(b)(2).

9   Defendants have acted on grounds generally applicable to the proposed class, thereby making

10  final injunctive, declaratory, and APA relief appropriate.

11                                      **CLAIMS FOR RELIEF**

12                                          **Count I**
                                   **Fourteenth Amendment**
13                               **(Against all Defendants)**

14      107.    All of the foregoing allegations are repeated and realleged as though fully set

15  forth herein.

16      108.    The Citizenship Clause of the Fourteenth Amendment guarantees U.S. citizenship

17  to Plaintiffs' soon-to-born children and others similarly situated who are born within the United

18  States. Such children are "subject to the jurisdiction of" the United States.

19      109.    The Executive Order unlawfully interferes with this guarantee of birthright

20  citizenship.

21      110.    Accordingly, Plaintiffs seek an injunction that enjoins Defendants from

22  implementing or enforcing the Executive Order.

23

24

COMPLAINT - 19
Case No. 2:25-cv-163

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

**Count II**
**Declaratory Judgment**
**(All Defendants)**

111.     Paragraphs ¶¶ 1–106 are repeated and realleged as through fully set forth herein.

112.     Under 28 U.S.C. § 2201(a), a court "may declare the rights and other legal relations of any interested party seeking such declaration."

113.     The Citizenship Clause of the Fourteenth Amendment and federal statutory law guarantees U.S. citizenship to Plaintiffs' soon-to-born children and others similarly situated who are born within the United States. Such children are "subject to the jurisdiction of" the United States.

114.     Accordingly, Plaintiffs request that the Court declare that Plaintiffs' children born on or after the implementation date of the Executive Order and others similarly situated are U.S. citizens and that the Executive Order violates the Citizenship Clause and federal statute.

**Count III**
**Administrative Procedure Act**
**(All Defendants Except President Trump)**

115.     Paragraphs ¶¶ 1–106 are repeated and realleged as though fully set forth herein.

116.     The actions of Defendants that are required or permitted by the Executive Order, as set forth above, are contrary to constitutional right, power, privilege, or immunity, including rights protected by the Fourteenth Amendment to the U.S. Constitution, in violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(B).

117.     The actions of Defendants that are required or permitted by the Executive Order, as set forth above, violate 8 U.S.C. § 1401 *et seq*., and are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

118.    Accordingly, Plaintiffs request that the Court set aside any and all agency action that implements the Executive Order.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

(1)    Assume jurisdiction over this matter;

(2)    Certify the case as a class action as proposed herein and in the forthcoming motion for class certification;

(3)    Preliminarily and permanently enjoin Defendants from implementing or enforcing the Executive Order;

(4)    Declare that Plaintiffs' children born on or after the implementation date of the Executive Order and others similarly situated are U.S. citizens notwithstanding the terms of the Executive Order;

(5)    Declare that the Executive Order violates the Fourteenth Amendment and 8 U.S.C. § 1401;

(6)    Award costs and reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(7)    Grant such further relief as the Court deems just and proper.

Dated: January 24, 2025

Respectfully submitted,

s/ Matt Adams
Matt Adams, WSBA No. 28287
matt@nwirp.org

s/ Leila Kang
Leila Kang, WSBA No. 48048
leila@nwirp.org

s/ Glenda M. Aldana Madrid
Glenda M. Aldana Madrid, WSBA No. 46987
glenda@nwirp.org

s/ Aaron Korthuis
Aaron Korthuis, WSBA No. 53974
aaron@nwirp.org

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

1   NORTHWEST IMMIGRANT
    RIGHTS PROJECT
2   615 Second Ave., Suite 400
    Seattle, WA 98104
3   (206) 957-8611

4   *Counsel for Plaintiffs*

COMPLAINT - 22
Case No. 2:25-cv-163

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611